[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action to recover past rents and other lease obligations was tried to this court on December 20, 1995 and January 3, 1996. Briefs were filed up to January 17, 1996.
Plaintiff Kitts Lane Associated claims past rent, property taxes, common charges and condominium fees under a written lease dated July 1, 1989 for premises known as 50 Progress Circle, Unit 1B, Newington. The lease in evidence was between Progress Business Center Associated, predecessor in interest to Kitts Lane, and Allied Machinery, a partnership consisting of the defendants Halina Lewandowski and Chris Jankowski. The lease was for a term of three years and provided base rents of $11,760 for the first year ($980 monthly), $12,348 for the second year ($1029 monthly), and $12,960 for the third year ($1080 monthly). The lease required the tenants to pay as additional rent, real estate taxes and "operating expenses" applicable to the leased premises, as well as condominium fees.
A prior proposal to lease dated February 15, 1989 had been admittedly signed by Progress and the defendants but because of various circumstances including delays in construction, defendants did not enter the premises until June 15, 1989. Both parties have used this date as the actual commencement of the lease term.
-I-
A threshold issue in this case is whether the lease dated July 1, 1989 was actually signed by the defendants. The lease purports to bear the signature of Kris Jankowski, but defendants deny that it is his signature. They rely on his CT Page 3765 denial, that the lease in evidence is not the original lease, that it has only one witness and that the purported signature was not formally acknowledged or notarized.
There may be a presumption that a written signature on an instrument was written by the purported signer and where there is a presumption that an instrument was duly signed, one who alleges want of due signature has the burden of proving his claim. 80 C.J.S. Signatures § 8 (1968). In view of the similarity of the signature on the lease to the signature of Mr. Jankowski on checks signed by him, and the testimony of Margaret Bokewell, the witness on the lease, such a presumption is clearly warranted. Under these circumstances, defendant has failed to demonstrate that the signature on the lease was not that of Jankowski.
Moreover the defendant Halina Lewandowski admittedly signed a document entitled "Tenant Estoppel Certificate" dated July 27, 1992 addressed to Fleet Bank, in connection with a pending refinance of the mortgage on the overall premises including Unit 1B, which acknowledged the existence of a lease on the unit "a complete and accurate copy" of which was recognized as being attached and "in full force and effect". Further supporting the validity of the lease is the fact that payments of the base rent for the first three years were made in virtually the exact amounts set forth in the lease. Accordingly it is concluded that the written lease dated July 1, 1989 was signed by Jankowski and was in full effect for its three year term.
-II-
There was conflicting evidence as to whether all the base rent payments due under the lease were made by defendants, the plaintiffs claiming a balance due of $150, the defendants claiming an overpayment of $1,029. Part of the discrepancy is due to the treatment of the $980 security deposit. If payment of the security deposit is credited, a review of the cancelled I checks submitted in evidence indicated that there was an overpayment of rent by the-defendants during the first years in the amount of $830.
-III-
The original lease dated July 1, 1989 had given the CT Page 3766 defendants the right to renew the lease subject to certain conditions and this right was not exercised. On April 16, 1993, some two months prior to the termination of the lease, Plaintiffs submitted a new three year lease to the defendants which was rejected, and defendants continued to occupy unit 1B until August 15, 1994.
There was conflicting evidence as to what arrangements were agreed upon for this continued occupancy, including a conversation with Gary Dayharsh, a partner of the original lessor and in 1992 an apparent agent for Kitts Lane. On September 28, 1992 defendants who had been paying $1,080 monthly base rent, wrote a check for $1,029 as rent for the previous month, based on the claimed agreement with Mr. Dayharsh. They continued to make base rent payments of $1,029 through May 15, 1994. None of the defendants checks were rejected and no notice of shortage was sent to defendants prior to the termination of occupancy on August 15, 1994. It is found that the monthly base rent between June 15, 1992 and August 15, 1994 was $1,029, and a review of the cancelled checks indicates a shortage of $1,179 in these payments.
In summary, taking into consideration the overpayment of during the first three years and the shortage of $1,179 in the ensuing period, it is found that defendants owe base rent in the amount of $349. Plaintiff's claim for base rent after August 15, 1994 is rejected since all obligations of the lessee ceased accruing after that time.
-IV-
Plaintiffs claim four years of real estate taxes and in addition $5,482 for various condominiums and common charges. The original lease contained provisions requiring the lessee to pay real estate taxes, and condominium fees. Defendants vigorously denied that they ever agreed to make such payments and in fact have made none.
As to these charges, the lease is not ambiguous. Paragraphs 4 and 6B clearly require the lessee to pay real property taxes and condominium fees on Unit 1B.
Defendants knew about the pending formalization of the condominium association and participated in some of the meetings. Monthly condominium fees of $220 were first CT Page 3767 instituted in September, 1993, and common charges allocable to Unit 1B were incurred in the cumulative amount of $862.21 prior to that date. Defendants were formally billed on March 3, 1992 for $200.79 in "common charges" incurred prior to that date. Paragraph 9 of the lease requires the lessee to "maintain all walks, driveway and parking areas." It is found that defendants assumed responsibility for paying the common charges and monthly condominium fees first under the original lease and then for the ensuing period between June 15, 1992 and August 15, 1994. These total $862.21 for common charges and $2,420 for condominium fees.
-V-
Real Property taxes allocable to Unit 1B were as follows:
List of 10-1-90 due 7-1-91 and 1-1-92 $1,851.29
List of 10-1-91 due 7-1-92 and 1-1-93 $1,409.14
List of 10-1-92 due 7-1-93 and 1-1-94 $1,400.02
Defendants were responsible for paying these taxes in the total amount of $4,660.45 since they fall within the time period covered by the lease or the period of occupancy following the terms of the lease as an implied continuing responsibility of the lessee. Plaintiff's further claim for the fourth year is rejected as are the claims for interest paid to the Tax Collector. Pargraph [Paragraph] 4 of the lease specifies that such property taxes were payable by the lessee "within ten (10) days of receipt of statements"; therefore Defendants were not notified in sufficient time to for them to make payments within the tax collection due period.
-VI-
Plaintiffs claim interest on balances due them as well as reasonable attorneys fees. The only attorneys fees clause in the original lease, appears in paragraph 23 as follows:
 In the event of a breach of this Lease Landlord shall be entitled to recover form Tenant the sum of all reasonable expenses of Landlord actually incurred in recovering possession of the Leased Premises and relating the same including loss of CT Page 3768 rental due to vacancy, cost of repair and renovating the Leased Premises management agents, commissions and fees, court cost and reasonable attorney' s fees minus any rent or additional rent due from a successor tenant. Landlord shall deliver to Tenant copies of receipts or statements plus other evidence substantiating the aforesaid costs as a condition to pay such sums. In any action by Landlord in which it seeks to recover possessions of the leased premises due to the nonpayment of rent of additional rent, tenant agrees to waive trial by jury.
This language is not clear enough to warrant an award of attorneys fees not based on repossession of the leased premises. The lease does not contain any provision for interest but statutory interest of ten per cent pursuant to General Statutes § 37-3a is awarded based on findings when each item fairly became payable, as follows:
(1) On unpaid rent of $1,179 from 8-15-94 to 4-15-96 $ 185.46
(2) On unpaid common charges and condominium fees in the total amount of $3,282.21 from 8-15-94 to 4-15-96 $ 546.80
(3) On unpaid monthly taxes — computed from date approximately ten (10) days after notice received by lessee as provided in Paragraphs 4 of Lease List of 10-1-90: $1,851.29 (notice sent 3/3/92) from 3-15-92 to 4-15-96 $ 755.83
 List of 10-1-91: $1,409.14 (notice sent 8-18-92) from 9-1-92 to 4-15-96 $ 475.53
 List of 10-1-92: $1,400.02 (notice sent 1-11-94) from 2-1-94 to 4-15-96 $ 308.15 ----------- Total interest to 4/15/96 $ 2,271.77
Judgment is entered in favor of plaintiffs for $8,291.64 in addition to $2,271.77 interest computed to April 15, 1996. CT Page 3769
Wagner, J.